E. C. ROWELL, Appellant, v. JOHN C. CLARK *et al*, Appellees.

Action to Determine Boundary Lines: PLAT AND FIELD NOTES: EVIDENCE SUFFICIENT TO OVERCOME SAME.    The evidence in an action to quiet title and determine the original goverment lines and corners of a fractional subdivision, examined and held sufficient to overcome the presumption arising from the recitals in the plat and field notes made by the government surveys, that the corners and lines were established at points other and different from those recognized by the owners at the time the action was brought.

*Appeal from Clay District Court.*—HON. W. B. QUARTON, Judge.

THURSDAY, JANUARY 29, 1903.

ACTION to quiet plaintiff's title to certain lands in Clay county, Iowa.    Defendant's denied plaintiff's owner-ship, pleaded an estoppel, the statute of limitations, and adverse possession.    They also asserted title to various subdivisions immediately surrounding that belonging to plaintiff, and claimed that the property in dispute was and is a part of their several tracts, and they asked that their titles be quieted and the corners and boundaries of the several tracts located and established.    The case was tried to the court, resulting in a decree for defendants on their counterclaims, and plaintiff appeals.—*Affirmed.*

*Carr & Iarker* and *Cornwall & Martin* for appellant.

*Healy Bros. & Kelleher* and *Buck & Kirkpatrick* for appellees.

DEEMER, J.—Plaintiff is the owner of the N. ½ of the N. ½ of section 4, township 97, range 35 W., in Clay county, Iowa, having acquired his title by warranty deed on December 7, 1895. According to the original plat and field notes, this tract of land was fractional, and, instead of containing one hundred and sixty acres, embraced not more than one hundred and thirty-five acres. Defendants say that according to actual measurement it contained not more than thirty-five and forty-hundredths acres. Defendant Barnard is the owner of E. ½ of the S. E. ¼ of the aforesaid section, defendant Clark the owner of the S. ½ of section 3, defendant Brennan the owner of the W. ½ of the S. E. ¼ of section 4, the defendants Herem and Kohleves the owners of the S. W. of section 4, and defendants Brett the owners of the S. ½ of the N. ½ of section 4. The real controversy is over the corners and boundaries of the land above described. The case in most of its aspects is similar to *Rowell v. Weinemann*, 119 Iowa, 256. According to the original government plat and field notes, the N. ½ of the N. ½ of section 4, while fractional, contained a little more than one hundred and thirty-five acres of land, and, if we are to be governed by them, plaintiff is entitled to a decree as prayed. Defendants contend, however, that according to the actual survey made by the government surveyors the tract contains but thirty-five and a fraction acres. Plaintiff, when he purchased the land, knew that it was a fractional quarter, had heard that there was a dispute regarding the number of acres in the tract, and evidently bought it as a speculation, hoping to have the corners and boundaries established according to the government plat and field notes. In order to protect himself,

and to lay the foundations for his claim the more securely he wrote his grantor to say nothing in his deed regarding the number of acres in the tract.    He knew where the roads were around these lands, for he had traveled them many times.    Plaintiff relies almost entirely on the original plat and field notes made by the government surveyors, and has had the lines run by competent surveyors according to this plat and field notes, which, as we have said, if accepted as correct, will give him title to the land he now claims.    The issues and evidence as to the true boundaries and corners between sections 4, 6, 9, 7, 8, 10, 5, 3, 1 and 2, 11 and 12, are practically the same as in the case of *Rowell v. Weinemann*, except, perhaps, as to the line between the north and south halves of the N. $\frac{1}{2}$ of section 4,—that is to say, the division line between plaintiff's land and that owned by defendant Brett; and the decision in that case is controlling here, except on the ground of estoppel.    No one of the defendants, except it be Brett, purchased of plaintiff, and he is not making any issue with plaintiff in this case, as we understand it.    Indeed, the plaintiff dismissed the case as to him.    There is no room in this case for the doctrine of acquiescence or of adverse possession, for the reason that the government did not patent the N. $\frac{1}{2}$ of the N. $\frac{1}{2}$ of section 4 until June, 28, 1895.    But the issues as to the corners and boundaries of the land are the same as in the *Weinemann Case*, and it was submitted on the same testimony.    These two cases, with *Brett v. Clark*, were tried together on the same evidence so far as applicable.

The point made by the appellant in these three cases is that the evidence as to the true boundaries and corners as actually located and run by the government surveyors is not sufficient to overcome the plat and field notes filed by them.    It must be conceded that the evidence as to the true corners given by these witnesses, if true, shows some very bad surveying by these government officials; but it is

well known that these original surveys were loosely made, and that but few, if any, of the early plats will stand the test of a careful and accurate resurvey. It must also be remembered that the trouble is found in the N. ¼ of section 4, just where we would, from the nature of things, and from the rules of the land department, be likely to find error. All parties agree that the quarter in question is fractional, and the difficulty lies in finding the exact corners and boundaries of plaintiff's tract. It is practically admitted that the surveyors called by him ran the lines in exact accord with the original plat and field notes. They made their surveys in 1896, and do not claim, as we understand it, that they found any of the original government corners. Indeed, they did not investigate the mounds and corners claimed by defendants with a view to ascertaining their authenticity.

Plaintiff is relying wholly on the government plat and field notes, and did not attempt to otherwise meet the testimony offered by defendants as to the actual monuments and distances. Defendants offered the testimony of at least four surveyors, who had surveyed the two north tiers of sections in the townships in which plaintiff's land is situated, some of them as early as in the year 1870, and who testified positively to having found the original government corners and monuments at the time their surveys were made, and that they were where defendants now claim them to be. They also offered at least nine other witnesses, who testified to having found and identified original corners and monuments, some of them as early as in the year 1871. These corners so testified to are where defendants now claim them to be. Surely, such evidence is more reliable than mere resurveys made in the year 1896, according to the original plat and field notes.

Moreover, the record is full of testimony to the effect that highways were laid out and established, bridges built, farms cultivated and improved, and fences erected accord-

ing to these corners and lines. This, of course, would not in itself estop plaintiff from claiming title to all the land actually owned by him, for reasons already stated. But as these improvements were made and highways established many years ago and at a time when the original monuments were presumptively, at least, plainly discernible, and as they seem to recognize, or at least accord with, the other evidence regarding the actual monuments, such facts are strongly corroborative of the other evidence in the case as to the actual boundaries.

Accepting defendants' testimony as true, it must be admitted, as we have already said, that there was some very bad surveying in this township. Some of the corners so established are something like eighty rods from where the field notes indicate they should be, and plaintiff's land, if governed thereby, instead of being a square, or in the form of a rectangular parallelogram, is markedly triangular and irregular in shape; that is to say, in the form of a rhomboid. But this is by no means conclusive, for the original plat and field notes show that plaintiff's land is not rectangular, nor in the form of a perfect parallelogram. If we were to indulge in presumption as to the cause of the difficulty, it would be found to be due, no doubt, to the presence of at least three large sloughs or lakes in the township, one of them covering nearly three sections of land, which were not actually chained or measured by the original surveyors. The hardships following a decree for plaintiff on the record before us have already been pointed out in the *Weinemann Case*, and need not be repeated here.

From what has been said it appears that we agree with the district court in its conclusions, and its decree is therefore AFFIRMED.